IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| DEBORAH SAMAH, : : Plaintiff, : v. : : COMMISSIONER OF SOCIAL SECURITY, : : Defendant. : : | Civil No. 17-08592 (RBK) **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on the appeal of Plaintiff Deborah Samah (Doc. No. 1) for review of the Administrative Law Judge's ("ALJ") decision denying Plaintiff's claims for disability insurance benefits, widow's insurance benefits, and supplemental security income. Because substantial evidence supports the ALJ's finding that Plaintiff was not disabled as defined in the Social Security Act on or after January 7, 2011, the Court **AFFIRMS** the ALJ's decision denying benefits.

I. BACKGROUND[1]

A. Procedural and Plaintiff's History

Plaintiff is a 57-year-old woman who finished three years of college. (R. at 165.) She is five feet, four inches tall, weighs 176 pound, worked as an administrative clerk, and has earnings dating back to 1988. (R. at 165, 167, 183.) Plaintiff last worked as a clerk in January 2011 before she was terminated for non-productivity. (R. at 168.) Plaintiff claims that she can no

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and most relevant to the instant motion. "R." in citations refers to pages in the administrative record. Additional facts are set forth as needed in the "discussion" section below.

longer work as a clerk because of pain from an accident in which she tripped on a step and fell head first into double glass doors, which did not break. (R. at 171, 181–183.)

On December 5, 2013, Plaintiff filed an application for disability and disability insurance benefits. (R. at 81.) She also filed applications for disabled widow's benefits and supplemental security income. (R. at 81.) In each application, Plaintiff alleged disability beginning on January 7, 2011. (R. at 81.) Her claims were denied initially and again on reconsideration. (R. at 81.) Thereafter, Plaintiff requested a hearing before an ALJ, held on April 5, 2016. (R. at 81.)

### B. ALJ Hearing and Medical Evidence

At the hearing before the ALJ, Plaintiff attributed a host of ailments to her fall. For example, she testified that she has severe headaches, which began a year after the accident, pain in her right shoulder, arm, elbow, and constant lower back pain. (R. at 170.) Plaintiff stated that she cannot carry, lift, push, or pull anything with her left arm because she experiences left shoulder pain, which fluctuates in intensity, though she testified that she can still use her right arm. (R. at 175–176.) She also testified that she has carpal tunnel syndrome in both of her wrists, and she experiences pain in her right arm. (R. at 170.) As for neck pain, Plaintiff stated that her neck's left side swells, causing pain that fluctuates from mild to "really hard." (R. at 174.) Plaintiff stated that she takes many pills and feels depressed. (R. at 174.) Although Plaintiff testified that she does no activities outside her home (R. at 178), she stated in her Adult Function Report that she goes to church, the library, the doctor, the supermarket, and physical therapy on a weekly or bi-weekly basis. (R. at 420.)

Dr. Tiffany Toliver is Plaintiff's treating physician. (R. at 173.) In an examination report dated September 16, 2014, Dr. Toliver diagnosed Plaintiff with shoulder pain, back pain, pain/numbness in her hands and feet, and checked a box indicating that Plaintiff could not work.

(R. at 665–666.) The report, which was not accompanied by a written analysis, stated that Plaintiff could not lift or use her arms or shoulders for more than a few minutes; Dr. Toliver also checked several boxes indicating that Plaintiff could not stand, walk, climb, stoop, bend, lift, or use her hands. (R. at 666.)

In a similarly styled medical source report dated October 20, 2014—also unaccompanied by a written report—Dr. Toliver listed the same upper extremity issues and checked a box indicating that they frequently interfered with Plaintiff's ability to perform simple work-related tasks. (R. at 699.) Dr. Toliver indicated that if Plaintiff were placed in a competitive work situation, she could sit for two hours, stand for one hour, and walk for one hour of an eight-hour workday. (R. at 699.) At the hearing before the ALJ, Plaintiff testified that on a good day, she can possibly sit for four hours, although there is "give and take." (R. at 178–179.)

Dr. Toliver's October 20, 2014 medical source statement also opined that Plaintiff had limited ability to reach, handle, or finger. (R. at 700.) Specifically, Dr. Toliver indicated that during an eight-hour workday, Plaintiff could use her right hand/fingers/arm to do simple grasping 34-66 percent of the time; pushing and pulling 0-33 percent of the time; and fine manipulation 34-66 percent of the time. (R. at 700.) With her left hand/fingers/arm, she could do each of these tasks 0-33 percent of the time. (R. at 700.) According to Dr. Toliver, Plaintiff could occasionally lift and carry zero to five pounds, but never more, and she could occasionally bend, squat, and reach above shoulder level, but could never crawl or climb. (R. at 700–701.) Dr. Toliver stated that in an eight-hour workday, Plaintiff would need to take unscheduled breaks due to her left shoulder, left arm, or low back pain, but did not specify how long. (R. at 701.) Dr. Toliver certified that she based all of this information on two office visits and a review of Plaintiff's records. (R. at 702.)

3

Consultative Examiner Samuel Wilchfort, by contrast, noted that previous doctors found normal x-rays of Plaintiff's left wrist, elbow, shoulder, and knee, and that Plaintiff had no edema and good pulses in her extremities. (R. at 641.) He also opined that Plaintiff's reflexes, ankle jerks, and muscle strength were all normal. (R. at 641.) He found Plaintiff's right hand, wrist, elbow, and shoulder all normal. (R. at 641.) On Plaintiff's left side, he also found Plaintiff's hand normal. (R. at 642.) Although her left wrist had no deformity or swelling, he noted some decreased dorsiflexion. (R. at 641.) Her left elbow and shoulder, however, had normal range of motion. (R. at 642.) He reported normal grip and pinch strength in Plaintiff's hands. (R. at 643.) He also opined that Plaintiff's hips, knees, and ankles were all normal and that she could toe walk, heel walk, squat, and had a normal gait. (R. at 642.) Lastly, he explained that any job requiring "constant lifting or bending probably will be difficult" for Plaintiff. (R. at 643.)

Similarly, other medical records from Jersey Shore Pain Management indicated that Plaintiff had equal strength and sensation bilaterally, as well as a negative straight leg raise bilaterally. (R. at 950.) Nor did she require assistive ambulation devices. (R. at 950.) Likewise, records from Premier Heath Care Institute noted that Plaintiff's extremities had no cyanosis, clubbing, or edema. (R. at 909.) Despite Plaintiff's complaints of pain, these records also indicated that Plaintiff was "not open" to more aggressive treatments like trigger point injections; Plaintiff likewise cancelled a lumbar epidural steroid injection that the doctor had ordered. (R. at 951.)

**C. The ALJ's Decision**

In June 2016, the ALJ denied Plaintiff's various disability applications. (R. at 80–88.) The ALJ applied the five-step framework for determining whether an individual is "disabled" under the Social Security Act. As initial matters, the ALJ concluded that Plaintiff met the

insured status requirements of the Social Security Act through March 31, 2016, as well as the Act's non-disability requirements for disabled widow's benefits. (R. at 83.) The ALJ also noted that the prescribed period would end on April 30, 2018. (R. at 83.) Then, at step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 7, 2011. (R. at 83.) At step two, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease, but found that it did not rise to listing-level severity at step three. (R. at 83, 85.) Nor did any other impairments. (R. at 85.)

Before proceeding to step four, and relevant to the issues before the Court, the ALJ determined Plaintiff's residual functional capacity ("RFC"). (R. at 85.) The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), meaning that Plaintiff can occasionally lift twenty pounds, frequently lift ten pounds, can sit, stand, and walk for six hours out of an eight-hour day, and can occasionally climb stairs, stoop, and balance. (R. at 85.) In reaching this conclusion, the ALJ found that "the degree and severity of the claimant's allegations are not entirely supported by the evidence." (R. at 85.) The ALJ also assigned "little weight" to the medical opinions of Dr. Toliver, Plaintiff's treating physician, and "some weight" to the opinions of Dr. Wilchefort. (R. at 86–87.)

Based on Plaintiff's RFC for light work with additional limitations, the ALJ found that Plaintiff could perform her past work as an administrative clerk. (R. at 87.) That work, the ALJ explained, does not require the performance of work-related activities precluded by Plaintiff's RFC. (R. at 87–88.) Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from January 7, 2011 through the date of the ALJ's decision. (R. at 88.) Accordingly, the ALJ denied Plaintiff's applications for disability insurance benefits, widow's benefits, and supplemental security income. (R. at 88.) This appeal followed.

## II. STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, the Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See* S*chonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Here, the ALJ used the established five-step evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak*, 777 F.3d at 611–12. First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that she cannot perform her past work, and the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e).

If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520 (a)(4)(v). If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v). Here, Plaintiff challenges the ALJ's RFC calculation and his step four conclusion based on that RFC that Plaintiff could

perform her past job as an administrative clerk (Pl.'s Br. at 6–20). (R. at 85–88.) Specifically, Plaintiff challenges the ALJ's treatment of the medical evidence and of Plaintiff's credibility in light of her work history. As set forth below, substantial evidence supports the ALJ's findings.

**A. Substantial Evidence Supports the ALJ's Treatment of the Medical Evidence**

Plaintiff raises two general arguments for why she believes the ALJ erred in analyzing the medical opinion evidence in formulating Plaintiff's RFC. First, Plaintiff claims that the ALJ erred in assessing factors used to assign weight to medical evidence. (Pl.'s Br. at 13–14.) Second, Plaintiff contends that the ALJ erred by failing to explain why he assigned little weight to the opinion of Dr. Toliver, Plaintiff's treating physician. Both arguments fail.

1. The ALJ Did Not Err in Treating the 20 C.F.R. § 404.1527(c) Factors

20 C.F.R. § 404.1527(c) sets forth factors to consider in determining how to weigh evidence from medical sources, including: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. *See Labanda v. Comm'r of Soc. Sec.*, No. 17-cv-3354, 2018 WL 259948, at *1 (D.N.J. Jan. 2, 2018); *see also Michael Edward Davern v. Comm'r of Soc. Sec.*, 660 F. App'x 169, 172 (3d Cir. 2016) (noting that "the weight due a medical opinion depends on a variety of factors" under 20 C.F.R. § 404.1527(c)).

Plaintiff contends that the ALJ erred because he "was required to consider, but did not acknowledge or discuss at all" certain of these factors. (Pl.'s Br. at 13.) According to Plaintiff, "while the ALJ mentioned in passing that Dr. Toliver treated Plaintiff," the ALJ "failed to acknowledge that the Agency prefers the opinions of treating sources" like Dr. Toliver, and that Dr. Toliver "actually examined Plaintiff." (Pl.'s Br. at 13–14.) Plaintiff also suggests that there

is "doubt as to whether [the ALJ] even considered" this latter point. (Pl.'s Br. at 14.) The Court finds no error, lest a harmful one. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (explaining that harmless error review applies to social security appeals).

The Court is not persuaded that the ALJ failed to acknowledge or consider that Dr. Toliver "actually examined Plaintiff." Plaintiff's own argument states that the ALJ acknowledged that Dr. Toliver treated Plaintiff. (Pl.'s Br. at 13.) The ALJ also noted that Dr. Toliver based her opinion "on two office visits in 2014" (R. at 87), completed an "examination report," (R. at 86) and cited to various records from Dr. Toliver (R. at 86–87). The September 16, 2014 record cited by the ALJ (R. at 86) contains a certification from Dr. Toliver that the "statements are based on current or past examinations of the patient." (R. at 665.) The October 20, 2014 record cited by the ALJ (R. at 86) notes that the medical information was "based on [a] clinical evaluation, other testing results, client discussions, and/or medical treatment." (R. at 699.) Thus, the Court cannot say that the ALJ failed to acknowledge or consider that Dr. Toliver "actually examined Plaintiff," just as his analysis, discussed more fully below, reflects that he knew of the general rule that the opinions of examining and treating sources are generally preferred, unless reasons exist to discount them, as the ALJ did here.

Moreover, Plaintiff does not clearly explain how or why the harm required to warrant a remand resulted from the ALJ's alleged failure to acknowledge the generalities that the Agency prefers treating physician opinions and that Dr. Toliver actually examined Plaintiff. *See Loza v. Comm'r of Soc. Sec.*, No. 15-cv-8964, 2017 WL 714349, at *3 (D.N.J. Feb. 22, 2017) (explaining that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination" and that the party seeking reversal "normally must explain why the erroneous ruling caused harm") (citing *Shinseki v. Sanders*, 556 U.S. 396, 409–10

9

(2009)). Indeed, a claimant must "explain [ ] . . . how the . . . error to which he points could have made any difference." *Holloman*, 639 F. App'x at 814 (finding "no basis to remand" when plaintiff "merely assert[ed] that harm was done" but "entirely sidestep[ped] the question" of "how [plaintiff] might have prevailed" if the ALJ had been more thorough).[2]

More importantly, an ALJ need not explicitly discuss each factor in his decision. *See*, *e.g.*, *Green v. Colvin*, No. 13-cv-03463, 2014 WL 3105037, at *7 (D.N.J. July 2, 2014) (rejecting argument that "the ALJ's decision to give more weight to the state medical consultants than Dr. Mehta was not supported by substantial evidence because the ALJ failed to consider the following factors: the examining relationship, the treatment relationship, supportability, consistency, and specialization"); *Podvorec v. Berryhill*, No. 17-cv-00137, 2017 WL 3705062, at *8 (W.D. Pa. Aug. 28, 2017) ("Although the ALJ did not explicitly spell out all of these factors in her decision, it contains enough detail for this Court to meaningfully review it."); *Laverde v. Colvin*, No. 14-cv-1242, 2015 WL 5559984, at *6 n.3 (W.D. Pa. Sept. 21, 2015) (rejecting argument that ALJ must "explicitly list" and discuss factors in § 404.1527(c)); *cf. Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) ("A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence.").[3]

Instead, an ALJ need only "explain his evaluation of the medical evidence for the district court to meaningfully review whether his reasoning accords with the regulation's standards."

---

[2] For the same reason, remand is not warranted based on Plaintiff's undeveloped assertion unconnected to any specific facts that "vocational testimony premised upon a deficient/inaccurate hypothetical cannot, as a matter of law, be substantial evidence supporting an ALJ's decision to deny benefits." (Pl.'s Br. at 9.)

[3] *Accord Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.").

*Laverde*, 2015 WL 5559984, at *6 n.3; *see also Leonardo v. Comm'r of Soc. Sec.*, No. 10-cv-1498, 2010 WL 4747173, at *6 (D.N.J. Nov. 16, 2010) (explaining that in determining a claimant's RFC, the ALJ need not use any "magic words" or adhere his analysis to a particular format). In other words, the ALJ is "simply required to indicate how the evidence was weighed and evaluated, in a clear enough way to permit judicial review." *Id.* at *6 (citing *Caruso v. Comm. of Soc. Sec. Admin.,* 99 Fed. App'x 376, 379–81 (3d Cir. 2004). That occurred here. As discussed below, the ALJ provided sufficient reasoning, consistent with caselaw and the regulatory factors, for the Court to find that substantial evidence supports the ALJ's decision to assign "little weight" to the opinion of Dr. Toliver.[4]

2. Substantial Evidence Supports the ALJ's Treatment of Dr. Toliver's Opinion

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records," *id.,* the law "is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011). If "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "Where inconsistency in evidence exists, the ALJ retains significant discretion in deciding whom to credit." *Ganges v. Commisioner of Social Sec.*, No. 17-cv-1982, 2018 WL 5342717, at *11 (D.N.J. Oct. 29, 2018) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, the ALJ "cannot reject

---

[4] Thus, Plaintiff also cannot show the harm required for a remand by suggesting that the ALJ's alleged failure to acknowledge the generalities related to the 20 C.F.R. § 404.1527(c) factors caused the ALJ to assign improper weight to Dr. Toliver's opinion.

11

evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Here, Plaintiff argues that the ALJ did not explain why he ultimately assigned "little weight" to the opinion of Dr. Toliver. (Pl.'s Br. at 14.) Plaintiff is mistaken. The ALJ assigned "little weight" to Dr. Toliver's opinions for several reasons. (R. at 85–87.)

First, the ALJ found that Dr. Toliver's opinion was not consistent with the Plaintiff's own testimony. (R. at 87.) For example, Dr. Toliver opined that Plaintiff could sit for two hours of an eight-hour workday (R. at 86), while Plaintiff stated that she could possibly sit for four hours straight on a good day. (R. at 87.) The ALJ's perceived inconsistency permits the ALJ to give Dr. Toliver's opinion limited weight. *See Scouten v. Comm'r Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) (holding that "the ALJ was entitled to give [the treating psychiatrist's] opinion limited weight" because it "was inconsistent" with other medical records); *see also* § 404.1527(c)(2) ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is . . . not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

Even assuming, as Plaintiff contends, that Plaintiff and Dr. Toliver gave these responses in reply to "plainly distinguishable" questions (Pl.'s Br. at 15), the ALJ's treatment of Dr. Toliver's opinion is still supported by substantial evidence because Dr. Toliver "did not explain how long [Plaintiff's] unscheduled breaks would have to be," nor did she "specify a degree of limitation for the activities that were checked off" in Dr. Toliver's check-the-box form report (R. at 86–87). *See Plummer*, 186 F.3d at 429 (explaining that an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided"); 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source

provides for a medical opinion, the more weight we will give that medical opinion."). Indeed, Dr. Toliver's check-the-box form report unaccompanied by a written report is itself weak evidence that need not be given controlling weight (R. at 665; *see also* R. 699–701). *See* 20 C.F.R. § 404.1527(c)(3); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Grogan v. Comm'r of Soc. Sec.*, 459 F. App'x 132, 138 n.7 (3d Cir. 2012) ("It is also noteworthy that the forms that Skobinsky filled out consisted largely of simply checking boxes. We have previously found the credibility of this type of opinion evidence to be suspect."); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986) (stating that when "residual functional capacity reports are unaccompanied by thorough written reports, their reliability is suspect").[5]

Substantial evidence further supports the ALJ's decision to assign Dr. Toliver's opinion little weight because, as the ALJ explained, Dr. Toliver based her opinion "on two office visits in 2014 and a review of the records." *See Scouten*, 722 F. App'x at 290 (holding that ALJ was entitled to give a treating psychiatrist's opinion "limited weight" given the doctor's "short treatment history"); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) (affirming ALJ's decision not to give significant weight to the opinion of a treating psychiatrist because that doctor "only examined Hatton twice," among other reasons); 20 C.F.R. §

---

[5] In citing one of these reports, which noted Plaintiff's shoulder pain, that Plaintiff could not lift, use her arms or shoulders for more than a few minutes, and had limited use of her hands (R. at 666), the ALJ explained that Dr. Toliver did not specify a degree of limitation for the activities that were checked off. (R. at 86.) Thus, Plaintiff's argument that the ALJ "did not address the reasons for rejecting Dr. Toliver's opinion" regarding Plaintiff's handling, pushing, pulling, manipulation and shoulder limitations does not appear correct. (Pl.'s Br. at 16.) To be sure, the record contains a different but similarly styled form report from Dr. Toliver discussing similar conditions (R. at 699), and the ALJ cited it regarding Plaintiff's ability to grasp, push, pull, and manipulate. But like the first form report, the ALJ was entitled to give its findings limited weight because it was not fully explanatory as to the breaks Plaintiff would require, and because the ALJ found Dr. Toliver's opinions to be based on a short treatment history and not supported by the totality of the evidence, as discussed below. (R. at 86–87.)

13

404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); *Id.* at § 404.1527(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion.").

Moreover, the ALJ found that Dr. Toliver's opinion about Plaintiff's disability was not supported by "the totality of evidence," which the ALJ carefully discussed throughout the opinion. For example, Plaintiff notes that Dr. Toliver found that Plaintiff could occasionally lift up to five pounds and is limited to occasional grasping with the left hand, frequent with the right hand, occasional pushing and pulling bilaterally and occasional fine manipulations with the left hand, frequent with the right. (Pl.'s Br. at 9 (citing R. at 699–700).) But as the ALJ noted, "treating physicians observed that she retained a largely normal physical functional capacity" and that she "had equal strength and sensation bilaterally." (R. at 85.) She also had no cyanosis, clubbing, or edema, nor did she pursue more aggressive treatment options as treating providers recommended. (R. at 85.) And Dr. Wilchfort observed that Plaintiff retained normal muscle strength, including largely normal motion in Plaintiff's shoulders, elbows, wrists, and hands (R. at 85, 641–643.) Accordingly, and for each reason above, substantial evidence supports the ALJ's decision to assign little weight to Dr. Toliver's medical opinion.

Finally, Plaintiff argues that the ALJ erred by failing to incorporate into Plaintiff's RFC the limitations as alleged by Dr. Toliver, including her shoulder, arm, and hand limitations (Pl.'s Br. at 9, 16.) But an ALJ "need only include in the RFC those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007). As set forth above, the ALJ explained why he gave little weight to Dr. Toliver's findings, and thus the ALJ did not err in formulating an RFC less restrictive than what Dr. Toliver would have found. *See*

*id.* ("Thus, to the extent that [the ALJ] found some of Salles's alleged limitations less than credible, the ALJ properly excluded them from the RFC."). Indeed, the ALJ's decision to exclude Dr. Toliver's suggested upper extremity limitations from the RFC is supported by Dr. Wilchfort's report, which contained "normal observations" about Plaintiff's physical functioning and, in addition to the other evidence cited by the ALJ (R. at 85), "contradict[ed] the severity of the claimant's alleged pain and limitations." (R. at 85; *see also* R. at 641–643.)

At bottom, and regardless of these opinions, "the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion." *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003); *see also Brown*, 649 F.3d at 197 n.2 ("The law is clear, however, that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."). That occurred here: the ALJ properly considered the medical evidence of record, noted the reasons he assigned different weights to the reports, and reached a decision. *See Demaio v. Berryhill*, No. 15-cv-5187, 2017 WL 4618749, at *4 n.2 (D.N.J. Oct. 13, 2017) (citing *Nirka v. Colvin*, No. 15-cv-2409, 2016 WL 3077359, at *13, n.5 (M.D. Pa. June 1, 2016) ("To the extent Plaintiff infers that the RFC must be directly supported by a medical opinion, the Court agrees with Defendant that an ALJ is not required to base his RFC assessment on medical opinion because RFC is an administrative finding reserved to the ALJ.")).

For these same reasons, the Court is equally unpersuaded by Plaintiff's argument that the ALJ impermissibly substituted his own lay opinion into his RFC analysis when he rejected the limitations Dr. Toliver suggested. (Pl.'s Br. at 20); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."); *Demaio*, 2017 WL 4618749, at *4

n.2. Because substantial evidence supports the ALJ's RFC determination and his treatment of the medical evidence, his findings must be affirmed.

### B. Substantial Evidence Supports the ALJ's Treatment of Plaintiff's Subjective Claims

Next, Plaintiff argues that the ALJ engaged in an "improper evaluation" of Plaintiff's "credibility" when determining that her self-described limitations were not consistent with and supported by the record. (Pl.'s Br. at 22, n.4.) In addition to each rejected argument above, Plaintiff argues that the ALJ erred because he "never" considered Plaintiff's "lengthy and consistent work history" in assessing Plaintiff's credibility. (Pl.'s Br. at 22–23.) According to Plaintiff, her work history lends support to her subjective claims of disability, as she would not trade in her productive or lucrative work career for the far less lucrative "career" of receiving disability benefits. (Pl.'s Br. at 23.)

The Court disagrees because the ALJ's decision, read as a whole, shows that the ALJ considered Plaintiff's work history. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (explaining that an ALJ's decision should be "read as a whole" to determine if substantial evidence supports it). After discussing the medical evidence, the ALJ noted that "a review of the claimant's earning record reveals that the claimant performed" her past job as an administrative clerk "at a substantial gainful activity level" within the last fifteen years. (R. at 87.) In discussing Plaintiff's ability to engage in substantial gainful activity since the alleged onset date, the ALJ similarly noted that Plaintiff worked after that time and listed her earnings. (R. at 83.) Likewise, the ALJ cited a reference letter from Plaintiff's roommate providing a "summary of the claimant's work history" since 2012, as well as a business owner's reference letter, which discussed "the claimant's employment with this company as well as the claimant's cash

allowance during different time periods." (R. at 87.) Accordingly, Plaintiff's claim that the ALJ "never" considered Plaintiff's work history provides no ground to remand. (Pl.'s Br. at 23.)

Even if the Court were to credit Plaintiff's claim that the ALJ never considered Plaintiff's work history, Plaintiff does not explain how or why additional discussion of her work history would change the ALJ's conclusion that "the degree and severity of the claimant's allegations are not entirely supported by the evidence," which the ALJ discussed at length. (R. at 85–86); *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). For example, Plaintiff offers no explanation as to why additional discussion of her work history would change the conclusion that her complaints of neck pain, lower back pain, and pain upon walking are inconsistent with the medical evidence showing largely normal physical functional capacity and other evidence of normal functioning. (R. at 85.) Nor does she explain how additional discussion would change the ALJ's conclusion that Plaintiff's subjective complaints of pain are inconsistent with her decision to forgo more aggressive treatments and her ability to engage in a normal range of daily activities, including going to church, the library, the doctor, the supermarket, and physical therapy on a weekly or bi-weekly basis. (R. at 85–86.)

To be sure, Plaintiff could—but does not—argue that the ALJ should have found her subjective allegations of disability *more credible* because of her prior work history. Instead, Plaintiff clearly—and incorrectly—argues that the ALJ "never" considered her work history. (Pl.'s Br. at 22–23.) But even if Plaintiff had made the first argument, she could not show harmful error here.

In *Taybron v. Harris*, the Third Circuit "addressed the issue of how to assess the credibility of a claimant's testimony about disabling pain." 667 F.2d 412, 415 n.6 (3d Cir. 1981). The Third Circuit held that "testimony of subjective pain is entitled to weight if it is

17

supported by competent medical evidence" and "when the claimant has worked for a long period of time." *Id.* Here, Plaintiff may have worked for a long period of time, but as the ALJ found, the record evidence does not entirely support Plaintiff's subjective testimony that she is disabled. Unlike in *Taybron*, where "[e]very doctor who examined Taybron acknowledged he was in great pain" *id.*, Plaintiff's "normal range of daily activities" and the observations of treating physicians were inconsistent with Plaintiff's subjective allegations of permanent disability. (R. at 85–86.)

Thus, unlike in *Taybron*, the ALJ was not required to give Plaintiff's subjective descriptions of disability greater weight even in light of her work history. *See Popovich v. Berryhill*, No. 16-cv-3042, 2017 WL 2780746, at *11 (D.N.J. June 27, 2017) (explaining that "[t]he fact alone that a claimant has a long work history does not require a remand, particularly when medical evidence does not support a claimant's testimony of the extent of her limitations" (citing *Salazar v. Colvin*, No. 12-cv-6170, 2014 WL 6633217, at *7 (E.D. Pa. Nov. 24, 2014))); *see also Corley v. Barnhart*, 102 Fed. App'x 752, 755 (3d Cir. 2004) (holding that the "ALJ did not err by failing to afford Corley heightened credibility based solely on his work history" because such heightened credibility findings are appropriate in cases where "the claimant not only had a long and productive work history, but also showed evidence of severe impairments or attempted to return to work").

At bottom, the ALJ was entitled to assess the evidence and conclude that Plaintiff had overstated the extent of her symptoms. Because he gave permissible reasons for doing so, his credibility determinations will not be disturbed. *See Pergentile v. Berryhill*, No. 16-cv-1381, 2018 WL 5730173, at *7–8 (D.N.J. Nov. 1, 2018) (noting that "credibility determinations of an administrative judge are virtually unreviewable on appeal" and deferring to the ALJ's conclusion that Plaintiff overstated the extent of her symptoms when the ALJ explained that the "claimed

intensity of such symptoms was not credible in the context of the medical evidence" (citation omitted)); *Cruz v. Comm'r of Soc. Sec.*, No. 13-cv-01694, 2014 WL 505578, at *6 (D.N.J. Feb. 6, 2014) (refusing to "disturb the ALJ's determination that Plaintiff has the RFC for light work" when the "ALJ found that Plaintiff lacked credibility due to inconsistencies between his testimony and the record"). Accordingly, substantial evidence supports the ALJ's treatment of Plaintiff's credibility and subjective allegations.

## IV. CONCLUSION

For the foregoing reasons, the ALJ's decision denying benefits is **AFFIRMED**.

Dated: 11/27/2018 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge